2021 IL App (1st) 210828-U

No. 1-21-0828

Order filed November 4, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF KERRY PARIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| and | ) | No. 16 D 4685 |
| | ) | |
| FRANK MARTIN PARIS JR., | ) | Honorable |
| | ) | Abbey Fishman Romanek, |
| Respondent-Appellant. | ) | Judge, presiding. |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  In this interlocutory appeal, the trial court did not abuse its discretion by denying the husband's motions to dissolve the prior order that granted the wife temporary exclusive possession of the marital residence.

¶ 2    In this interlocutory appeal from marriage dissolution proceedings, the trial court granted the wife temporary exclusive possession of the marital residence. The husband moved to dissolve that temporary injunction, arguing that the basis for the order no longer existed because repairs to the marital residence were complete. After an evidentiary hearing, the trial court denied the

husband's motions, ruling that rescinding the temporary exclusive possession order would lead to serious endangerment of the children because the circumstances upon which the court had based the order had not changed.

¶ 3      On appeal, the husband argues the trial court erroneously (1) concluded that the wife was entitled to temporary exclusive possession of the marital home, (2) concluded that the physical and mental well-being of the wife and children was jeopardized by both parties occupying the marital residence, and (3) denied the husband's motions to dissolve the temporary injunction because all the safety issues with the marital residence had been remediated.

¶ 4      For the reasons that follow, we affirm the judgment of the circuit court.[1]

¶ 5                            I. BACKGROUND

¶ 6      In May 2016, Kerry Paris filed a petition for dissolution of marriage. She and Frank Martin Paris Jr. (Martin) were married for 14 years and had seven children, whose ages ranged from 2 to 12 years old.

¶ 7      In March 2017, the trial court entered an order that established a "bird nesting" arrangement whereby the party who was exercising parenting time with the children would have exclusive possession of the marital residence during that parenting time.

¶ 8      In March 2019, Kerry petitioned the court for exclusive possession of the marital residence under section 501(c-2) of the Illinois Marriage and Dissolution of Marriage Act (Act), which provides:

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

"Allocation of use of marital residence. Where there is on file a verified complaint or verified petition seeking temporary eviction from the marital residence, the court may, during the pendency of the proceeding, only in cases where the physical or mental well-being of either spouse or his or her children is jeopardized by occupancy of the marital residence by both spouses, and only upon due notice and full hearing, unless waived by the court on good cause shown, enter orders granting the exclusive possession of the marital residence to either spouse, by eviction from, or restoration of, the marital residence, until the final determination of the cause pursuant to the factors listed in Section 602.7 of this Act. No such order shall in any manner affect any estate in homestead property of either party. In entering orders under this subsection (c-2), the court shall balance hardships to the parties." 750 ILCS 5/501(c-2) (West 2018).

¶ 9    After a three-day hearing, the trial court, on January 30, 2020, awarded Kerry temporary exclusive possession of the marital residence.

¶ 10    On February 13, 2020, Martin moved the court, pursuant to section 2-1203 of the Code of Civil Procedure (735 ILCS 5/2-1203 (West 2018)), to reconsider its January 30 order. Specifically, Martin argued that the trial court failed to apply the law regarding the element of jeopardy to physical or mental well-being, the evidence failed to meet the standards of the applicable law, and the court failed to balance the hardships to Martin and the children.

¶ 11    On June 3, 2020, the court denied Martin's motion to reconsider and denied his request to stay the temporary exclusive possession order pending appeal. This oral ruling was included in a written order dated June 4, 2020.

¶ 12    On June 17, 2020, Martin filed a notice of interlocutory appeal, appealing from the trial court's January 30, 2020 exclusive possession order and the June 4, 2020 order denying his motion to reconsider. Specifically, Martin argued that (1) the trial court incorrectly used the best-interests-of-the-children standard in reaching its decision, and (2) the court's ruling that co-occupancy of the marital resident jeopardized the well-being of Kerry and the children was against the manifest weight of the evidence.

¶ 13    On March 25, 2021, this court dismissed Martin's appeal based on lack of jurisdiction because he failed to file his notice of interlocutory appeal within 30 days of the January 30, 2020 injunctive relief order, as required by Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017). Specifically, Martin's due date to appeal the January 30, 2020 interlocutory order that granted Kerry temporary exclusive possession of the marital residence was March 2, 2020 (because the 30th day fell on a weekend), but Martin did not file his notice of appeal until June 17, 2020. *In re Marriage of Paris*, 2021 IL App (1st) 200769-U.

¶ 14    On April 27, 2021, Martin moved the trial court to dissolve the January 30, 2020 temporary injunction that granted Kerry temporary exclusive possession of the marital home. He argued that the basis for the temporary injunction no longer existed because Kerry had testified that several necessary repairs to the residence were complete. On April 30, 2021, Martin filed an emergency motion to dissolve the temporary injunction, alleging that the condominium he had previously occupied was no longer available to him and his current apartment was too small to accommodate the parties' seven children and too inconveniently located to accommodate their social and extracurricular activities.

¶ 15    In her response, Kerry discussed the evidence presented at the three-day hearing in January 2020, including how Martin used the nesting arrangement to jeopardize her and the children's mental and physical well-being and caused her and the children to suffer physical manifestations from severe stress. Kerry asserted that the exclusive possession order saved her and the children and essentially eliminated the parties' need to appear in front of the court on issues involving the children. Also, the exclusive possession order was based on more than repair issues with the home, and Martin's motion to dissolve was financially driven. She argued that prior to the exclusive possession order, she lived in constant fear due to Martin.

¶ 16    On June 9, 2021, the trial court held an evidentiary hearing on the motions to dissolve. The court heard testimony from Kerry and Martin and then heard argument from the parties' counsel and the children's representative.

¶ 17    After hearing argument, the trial court denied Martin's motions to dissolve the temporary injunction, stating that the temporary exclusive possession order was based on serious endangerment to the children, those circumstances had not changed, and rescinding that order "would in no uncertain terms lead to serious endangerment of the children, period, end of story. *** The serious endangerment issue has not changed."

¶ 18    On July 9, 2021, Martin filed his notice of interlocutory appeal.

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, Martin argues that (1) the trial court used the wrong legal standard when it improperly concluded that Kerry was entitled to exclusive possession of the marital home, (2) the trial court's conclusion that both parties' co-occupancy of the marital residence jeopardized the physical and mental well-being of Kerry and children was against the manifest weight of the

evidence, and (3) the trial court's denial of Martin's motions to dissolve the temporary injunction was against the manifest weight of the evidence because all the safety issues concerning the marital residence had been remediated.

¶ 21                                    A. Jurisdiction

¶ 22    Martin believes that his entire appeal is timely because he filed his July 9, 2021 notice of interlocutory appeal within 30 days of the June 9, 2021 order that denied his motions to dissolve the temporary injunction. Kerry, however, argues that this court lacks jurisdiction over the first and second issues Martin presents on appeal because his arguments therein challenge the trial court's January 30, 2020 order, and if his prior June 17, 2020 notice of interlocutory appeal in case No. 20-0769 was too late to vest this court with jurisdiction to review the January 30, 2020 order, then his July 9, 2021 notice of interlocutory appeal surely fares no better.

¶ 23    Jurisdiction is a threshold issue which may be raised at any time (*Geise v. Phoenix Company of Chicago, Inc.*, 159 Ill. 2d 507, 515 (1994)), and this court has an independent duty to consider its jurisdiction and dismiss an appeal where jurisdiction is lacking (*Palmolive Tower Condominiums, LLC v. Simon*, 409 Ill. App. 3d 539, 542 (2011)). The appellant bears the burden of establishing jurisdiction. *United States Bank National Association v. In Retail Fund Algonquin Commons, LLC*, 2013 IL App (2d) 130213, ¶ 24 (citing Ill. S. Ct. R. 341(h)(4) (eff. July 1, 2008)).

¶ 24    According to the plain language of Rule 307(a), a party is allowed to appeal an interlocutory order as long as the appeal is "perfected within 30 days from the entry of the interlocutory order by filing a notice of appeal designated 'Notice of Interlocutory Appeal.' " Ill. S. Ct. R. 307(a). Accordingly, Martin's due date to appeal the trial court's January 30, 2020 interlocutory order that granted Kerry temporary exclusive possession of the marital residence was

March 2, 2020 (because the 30th day fell on a weekend). Martin, however, filed his notice of appeal in this matter on July 9, 2021. Furthermore, Martin's April 27, 2021, motion to dissolve the January 30, 2020 temporary injunction did not toll the time for filing his appeal. See *In re Marriage of Paris*, 2021 IL App (1st) 200769-U, ¶ 22 (citing *In re Marriage of Salviola*, 2020 IL App (1st) 182185, ¶ 39, which held that a motion to reconsider does not toll the time for appealing an interlocutory order); *In re Adoption of Anderson*, 88 Ill. App. 3d 42, 44 (1980) (if a party chooses to appeal an interlocutory order under Rule 307(a)(1) instead of waiting for the court to issue a final order, then the litigant has only 30 days from the entry of the interlocutory order to perfect an appeal).

¶ 25    Consequently, we conclude that Rule 307(a)(1) is not a basis for this court to exercise jurisdiction over the first and second issues of Martin's interlocutory appeal, which challenge the trial court's January 30, 2020 order that granted Kerry temporary exclusive possession of the marital residence and ruled that the parties' co-occupancy of the marital residence jeopardized the well-being of Kerry and the parties' children.

¶ 26                              B. Motions to Dissolve Injunction

¶ 27    Martin argues that the trial court's denial of his motions to dissolve the January 30, 2020 temporary injunction that evicted him from the marital home was against the manifest weight of the evidence because all the safety issues concerning the home's black mold problems, water damage, and unfinished construction had been remediated. Martin argues no basis exists to maintain the injunction because all the issues with the home have been addressed and corrected. Specifically, he asserts that Kerry testified at the June 2021 evidentiary hearing on his motions to dissolve that all of the safety hazards in the home had been remedied. Furthermore, he testified

that the condominium he had occupied since he was evicted from the marital home was no longer available to him and his current apartment was too small to accommodate the parties' seven children and too inconveniently located to accommodate their social and extracurricular activities. Martin argues that the trial court failed to consider the increased expense the eviction placed on him and did not balance the hardships to the parties as required under section 501(c-2) of the Act.

¶ 28  Kerry responds that Martin used the nesting arrangement to control and torture her and the children, and the evidence and testimony support the trial court's ruling not to dissolve the temporary exclusive possession order.

¶ 29  "Generally, with respect to preliminary injunctions, a court has inherent power during the pendency of the case before it to issue, modify, or vacate such injunctions. [Citations.] The circuit court possesses power to dissolve a preliminary injunction absent change of facts or law from the time of issuance to the time of dissolution, provided a sufficient basis exists to support dissolution. Whether or not to dissolve the injunction rests within the discretion of the court." *Patrick Media Group Inc. v. City of Chicago*, 252 Ill. App. 3d 942, 946 (1993); see also *Palacios v. Mlot*, 2013 IL App (1st) 121416, ¶ 18 (an abuse of discretion occurs only when the trial court's ruling is arbitrary, fanciful or unreasonable, or when no reasonable person would take the same view). An injunction will be continued "if it appears that less harm from this course will result to the enjoined party if he should be finally victorious than would accrue to the complainant from the absence of the injunction if he were the winning party." *Simpkins v. Maras*, 17 Ill. App. 2d 238, 246 (1958).

¶ 30  Contrary to Martin's argument on appeal, the trial court's temporary injunction that granted Kerry temporary exclusive possession of the martial home was not based "solely on the condition of the home and the perceived stress it placed on Kerry and the children." Martin's argument belies

the evidence and testimony that was presented at the three-day hearing in January 2020. He disregards the trial court's findings regarding the endangerment of Kerry and the children's mental and physical well-being and key testimony regarding the financial and verbal abuse that he inflicted upon Kerry throughout the duration of the nesting arrangement. All the projects on the marital home were completed after the court granted Kerry exclusive possession of the home and the sole ability to use insurance funds to restore the marital property. Martin had allowed the home to remain in a constant state of construction and disrepair, with exposed rusty nails, black mold, ripped up floors, exposed outlets, and animals nesting in the ceiling. He did not pay for any of the complained-of home defects, but told the children several times that he would fix the home quickly once he knew whether he would have possession of the home.

¶ 31    Aside from the physical jeopardy that Kerry and the children experienced due to the nesting arrangement, the evidence clearly showed that their mental well-being was also jeopardized by the extreme amount of stress they experienced as a result of the nesting arrangement. One child's hair was falling out and another child was experiencing bloody noses. Kerry had endured years of verbal abuse, name calling and bullying from Martin. Her hair was falling out and she was losing sleep and could not concentrate. The children were socially withdrawn and witnessed Martin's name calling towards Kerry. One child asked that the parties not be in the same place.

¶ 32    Martin also violated the nesting arrangement by letting himself into the marital residence during Kerry's parenting time or refusing to leave the home at the beginning of Kerry's parenting time. Martin used the changeover period of the nesting arrangement to berate Kerry in front of the children, who were forced to listen to Martin call Kerry countless derogatory names for about three years. Other problems included Martin being late or taking the children away during Kerry's

parenting time. He also rooted through Kerry's belongings and often took her belongings. He forwarded the mail so Kerry would not receive it and purposefully undid chores that she had finished. He withheld funds and did not pay for the required repairs despite orders from the trial court. Multiple utilities, including internet, telephone, water and heat, were shut off on multiple occasions due to Martin's failures.

¶ 33    The trial court had the opportunity to review the evidence and weigh the credibility of the testimony. We conclude that the trial court did not abuse its discretion when it denied Martin's motions to dissolve the temporary injunction.

¶ 34                                   III. CONCLUSION

¶ 35    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 36    Affirmed.